**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| PLENTY UNLIMITED TEXAS LLC, *et al.*,[1] | Case No. 25-90105 (CML) |
| Debtors. | (Joint Administration Requested) |

**JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**OF PLENTY UNLIMITED TEXAS LLC AND ITS DEBTOR AFFILIATES**

**SIDLEY AUSTIN LLP**
Duston K. McFaul (TX Bar No. 24003309)
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone:     (713) 495-4500
Facsimile:     (713) 495-7799
Email:          dmcfaul@sidley.com

Anthony Grossi (*pro hac vice* pending)
Ameneh Bordi (*pro hac vice* pending)
Weiru Fang (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: agrossi@sidley.com
         abordi@sidley.com
         weiru.fang@sidley.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**WILSON SONSINI GOODRICH &**
**ROSATI**
Erin Fay (*pro hac vice* pending)
222 Delaware Ave #800
Wilmington, DE 19801
Telephone: (302) 304-7600
Facsimile: (650) 493-9301
Email:  efay@wsgr.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

Dated: March 23, 2025

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each of the Debtors' federal tax identification numbers, are:  Plenty Unlimited Texas LLC (3500); Plenty Unlimited Inc. (0916); MJNN LLC (N/A); White Farms LLC (N/A); Blue Gardens LLC (8487); Bright Agrotech, Inc. (4106); and P F2 VA LLC (9633).  The Debtors' service address is 1461 Commerce Drive, Laramie, WY 82070.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION
        OF TIME, AND GOVERNING LAW ..................................................1
    A.    Defined Terms. ..........................................................................1
    B.    Rules of Interpretation. ............................................................16
    C.    Computation of Time. ...............................................................18
    D.    Governing Law. ........................................................................18
    E.    Reference to Monetary Figures. ................................................18
    F.    Reference to the Debtors or the Reorganized Debtors...............18
    G.    Nonconsolidated Plan. ..............................................................18
    H.    Controlling Document. .............................................................18
    I.    Consultation, Information, Notice, and Consent Rights. ..........19

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS,  PRIORITY CLAIMS,
        AND TRANSACTION EXPENSES .....................................................19
    A.    Administrative Claims. .............................................................19
    B.    DIP Claims. ..............................................................................19
    C.    Professional Fee Claims. ..........................................................20
    D.    Priority Tax Claims. ..................................................................21
    E.    Payment of Transaction Expenses. ...........................................21

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND
        INTERESTS ....................................................................................21
    A.    Classification of Claims and Interests. .....................................21
    B.    Treatment of Claims and Interests. ...........................................22
    C.    Special Provision Governing Unimpaired Claims. ...................26
    D.    Elimination of Vacant Classes. .................................................26
    E.    Voting Classes, Presumed Acceptance by Non-Voting Classes...........26
    F.    Intercompany Interests. ............................................................26
    G.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
        Code. .......................................................................................26
    H.    Controversy Concerning Impairment. ......................................27
    I.    Subordinated Claims. ...............................................................27

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN.......................27
    A.    General Settlement of Claims and Interests. .............................27
    B.    Restructuring Transactions. ......................................................27
    C.    Reorganized Debtors. ...............................................................28
    D.    Continued Corporate Existence. ...............................................29
    E.    Vesting of Assets in the Reorganized Debtors. .........................29
    F.    Cancellation of Existing Securities and Agreements..................30
    G.    Cancellation of Certain Existing Security Interests....................30
    H.    Sources of Consideration for Plan Distributions. ......................31
    I.    Rights Offering. ........................................................................31
    J.    New Money Private Placement..................................................32

K.      Certain Securities Law Matters.................................................................33
L.      New Equity Interests..................................................................................34
M.      Exit Facility...............................................................................................35
N.      Corporate Action.......................................................................................35
O.      New Organizational Documents. ..............................................................36
P.      Preservation of Causes of Action..............................................................37
Q.      1146 Exemption.........................................................................................38
R.      Indemnification Obligations. ....................................................................39

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
            LEASES ......................................................................................................39
A.      Assumption and Rejection of Executory Contracts and Unexpired Leases. ........39
B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases.............40
C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ........40
D.      Assumption of Mechanic's Lien Claimants' Executory Contracts.......................42
E.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired
        Leases........................................................................................................42
F.      Insurance Policies. ....................................................................................42
G.      Reservation of Rights.................................................................................43
H.      Nonoccurrence of Effective Date...............................................................43
I.      Contracts and Leases Entered Into After the Petition Date. .................................43

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...................................43
A.      Distributions on Account of Claims Allowed as of the Effective Date.................43
B.      Disbursing Agent. ......................................................................................44
C.      Rights and Powers of Disbursing Agent. ..................................................44
D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions. ..........44
E.      Manner of Payment.....................................................................................46
F.      Compliance with Tax Requirements..........................................................46
G.      Allocations. ...............................................................................................47
H.      Foreign Currency Exchange Rate. .............................................................47
I.      Setoffs and Recoupment. ...........................................................................47
J.      Claims Paid or Payable by Third Parties. .................................................48

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,
            AND DISPUTED CLAIMS .......................................................................49
A.      Allowance of Claims..................................................................................49
B.      Claims Administration Responsibilities. ...................................................49
C.      Estimation of Claims and Interests............................................................49
D.      Adjustment to Claims or Interests without Objection.................................50
E.      Disallowance of Claims or Interests. .........................................................50
F.      No Distributions Pending Allowance. .......................................................50
G.      Distributions After Allowance. ..................................................................50
H.      No Postpetition Interest on Claims. ...........................................................51
I.      Accrual of Dividends and Other Rights.....................................................51

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
              PROVISIONS ................................................................................51
    A.    Discharge of Claims and Termination of Interests. ...............................51
    B.    **Release of Liens.** ...............................................................................52
    C.    **Releases by the Debtors.** ....................................................................53
    D.    **Releases by Third Parties.** .................................................................54
    E.    **Exculpation.** .....................................................................................54
    F.    **Injunction.** ........................................................................................55
    G.    Protections Against Discriminatory Treatment. ...................................56
    H.    Document Retention. .............................................................................56
    I.    Reimbursement or Contribution. ..........................................................56

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ............57
    A.    Conditions Precedent to Confirmation...................................................57
    B.    Conditions Precedent to the Effective Date. .........................................57
    C.    Waiver of Conditions. ...........................................................................58
    D.    Effect of Failure of Conditions. ............................................................59
    E.    Substantial Consummation ....................................................................59

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN.........59
    A.    Modification and Amendments...............................................................59
    B.    Effect of Confirmation on Modifications. .............................................59
    C.    Revocation or Withdrawal of Plan........................................................59

ARTICLE XI. RETENTION OF JURISDICTION ................................................................60

ARTICLE XII. MISCELLANEOUS PROVISIONS ..............................................................62
    A.    Immediate Binding Effect.......................................................................62
    B.    Additional Documents. ..........................................................................63
    C.    Closure of Cases and Payment of Statutory Fees..................................63
    D.    Statutory Committee and Cessation of Fee and Expense Payment. .......63
    E.    Reservation of Rights.............................................................................63
    F.    Successors and Assigns..........................................................................63
    G.    Notices. ..................................................................................................64
    H.    Term of Injunctions or Stays. ................................................................64
    I.    Entire Agreement. ..................................................................................65
    J.    Plan Supplement. ...................................................................................65
    K.    Severability of Plan Provisions..............................................................65
    L.    Votes Solicited in Good Faith................................................................65
    M.    Closing of Chapter 11 Cases.................................................................66
    N.    Waiver or Estoppel. ...............................................................................66
    O.    Tax Matters. ...........................................................................................66

# INTRODUCTION

Plenty Unlimited Texas LLC and the above-captioned debtors and debtors in possession (collectively, the "Debtors"), propose this joint chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan") for the resolution of the outstanding claims against, and equity interests in, the Debtors. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor. Holders of Claims against, or Interests in, the Debtors may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, risk factors, a summary and analysis of this Plan, the Restructuring Transactions, and certain related matters. The Debtors and the Plan Sponsors (as defined herein) are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

*A.     Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.     "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 327, 328, 330, 365, 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Fee Claims; (c) Cure amounts; (d) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code; and (e) Transaction Expenses.

2.     "*Administrative Claims Bar Date*" means the deadline for Filing all requests for allowance and payment of Administrative Claims, which, except in the case of Professional Fee Claims, shall be thirty (30) days after the Effective Date. Professional Fee Claims shall be filed in accordance with the provisions of Article II.C. herein.

3.     "*Affiliates*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if such Entity were a debtor in a case under the Bankruptcy Code.

4.     "*Allowed*" means, with respect to any Claim, except as otherwise provided in the Plan:  (1) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been Filed; or (2) a Claim Allowed pursuant to the Plan, a Final Order of the Bankruptcy Court, or agreement, with the consent of the Plan Sponsors, between the Holder of such Claim and the Debtors; *provided that* with respect to a Claim described in clause (1) above, such Claim shall be considered Allowed only if, and to the extent that, with respect to such Claim, no objection to the allowance thereof has been Filed by the Debtors, the

Reorganized Debtors, or any other party in interest within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection was so Filed and the Claim shall have been Allowed by a Final Order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtors. "Allow" and "Allowing" shall have correlative meanings.

5.      "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy Law, including Claims, Causes of Action, or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer Laws

6.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended.

7.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas.

8.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time.

9.      "*Bar Date*" means, as applicable, the Administrative Claims Bar Date and any other date or dates established by an order of the Bankruptcy Court by which Proofs of Claim must be Filed. Notwithstanding the foregoing, the Professional Fee Claims shall be Filed in accordance with Article II.C herein and shall not otherwise be subject to the Bar Date.

10.      "*Bid Procedures*" means the bid procedures attached as <u>Exhibit 1</u> to the Bid Procedures Order.

11.      "*Bid Procedures Documents*" means the Bidding Procedures, the Bidding Procedures Motion, the Bidding Procedures Order, and the Stalking Horse Purchase Agreement.

12.      "*Bid Procedures Motion*" means the *Debtors' Emergency Motion for Entry of an Order (I)(A) Approving Bid Procedures and Authorizing Sale Transaction; (B) Approving the Selection of Stalking Horse Bidder and Authorizing the Debtors' Entry into the Stalking Horse Agreement; (C) Scheduling Auction and Sale Hearing; (D) Approving Sale Notices; (E) Approving Assumption and Assignment Procedures; and (II) Granting Related Relief*.

13.      "*Bid Procedures Order*" means the order entered by the Bankruptcy Court approving the Bid Procedures and establishing deadlines for the submission of bids and the auction in accordance with such procedures.

14.      "*Bridge Facility*" means that certain secured facility provided pursuant to the Bridge Facility Note.

15.    "*Bridge Facility Collateral Agent*" means the Collateral Agent under and as defined in the Bridge Facility Note.

16.    "*Bridge Facility Collateral and Guarantee Agreement*" means that certain Collateral and Guarantee Agreement dated as of February 21, 2025, by and among Parent, certain of the Debtors party thereto as Grantors, the Bridge Facility Collateral Agent and the Bridge Facility Holders, as amended, restated, amended and restated supplemented or otherwise modified from time to time.

17.    "*Bridge Facility Claims*" means any Claims, arising under, derived from, based on or related to the Bridge Facility, including, for the avoidance of doubt, in respect of principal, interest, fees, commitment premiums, exit premiums, other premiums, expenses, indemnities and other amounts arising or owing thereunder.

18.    "*Bridge Facility Claims Rights Offering Amount*" means a portion of the Rights Offering that shall be available for participation to Holders of Allowed Bridge Facility Claims, as specified in the Rights Offering Procedures, which amount shall be commensurate with the aggregate amount of Allowed Bridge Facility Claims relative to the aggregate amount and portion of Allowed Virginia Mechanic's Lien Claims and Allowed General Unsecured Claims that are receiving the right to participate in the Rights Offering.

19.    "*Bridge Facility Note*" means that certain Third Amended and Restated Note Due March 28, 2025, dated as of March 18, 2025, by and among Parent, certain of the Debtors party thereto as Loan Parties and the Bridge Facility Holders, as amended, restated, amended and restated supplemented or otherwise modified from time to time.

20.    "*Bridge Facility Documents*" means the Bridge Facility Note, the Bridge Facility Collateral and Guarantee Agreement and any other documentation entered into in connection with the Bridge Facility, including all agreements, documents, and instruments delivered or entered into in connection therewith, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents, instruments, financing and other equivalent statements, notices and related documents, as any of the foregoing may have been amended, restated, modified, or supplemented from time to time prior to the Petition Date.

21.    "*Bridge Facility Holders*" means, collectively, the "Holders" under and as defined in the Bridge Facility Note.

22.    "*Business Day*" means any day other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)) or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York.

23.    "*Cash*" or "*$*" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

24.    "*Cash Collateral*" has the meaning set forth in section 363(a) of the Bankruptcy Code.

25. "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, judgments, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, Law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by Law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state, provincial, or federal Law or breach of any duty imposed by Law or in equity, including securities Laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any Avoidance Actions.

26. "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

27. "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

28. "*Claims and Balloting Agent*" means Stretto, Inc., the notice, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases.

29. "*Claims Register*" means the official register of Claims and Interests maintained by the Claims and Balloting Agent.

30. "*Class*" means a class of Claims or Interests as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

31. "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

32. "*Combined Hearing Notice*" means the notice to be sent to the Debtors' stakeholders, notifying them of (i) the time of the hearing to consider (a) approval of the Disclosure Statement on a final basis and (b) confirmation of the Plan; and (ii) the deadline for objections to the adequacy of the Disclosure Statement and/or confirmation of the Plan.

33. "*Committee*" means any official committee of unsecured creditors appointed by the U.S. Trustee under section 1102(b) of the Bankruptcy Code in these Chapter 11 Cases.

34. "*Company Parties*" means the Parent and each of its direct and indirect subsidiaries.

35. "*Company-Related Matters*" means anything related to the Company Parties or the Debtors (including the management, ownership, or operation thereof), the purchase, sale,

amendment, or recission of any Claim against or Interest in the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Company Parties and any Released Party, the Company Parties' in- or out-of-court restructuring efforts, the Company Parties' intercompany transactions, the formulation, preparation, dissemination, solicitation, negotiation, entry into the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of, as applicable, the Chapter 11 Cases, the DIP Loan Documents, the Definitive Documents, the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transactions, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.

36.    "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

37.    "*Confirmation Date*" means the date the Confirmation Order is entered on the docket of the Chapter 11 Cases.

38.    "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court on confirmation of the Plan and the adequacy of the Disclosure Statement, as such hearing may be continued from time to time.

39.    "*Confirmation Order*" means the order entered by the Bankruptcy Court on the docket of the Chapter 11 Cases confirming the Plan.

40.    "*Consummation*" means the occurrence of the Effective Date.

41.    "*Cure*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

42.    "*D&O Liability Insurance Policies*" means all insurance policies of any of the Debtors for directors', managers', and officers' liability existing as of the Petition Date (including any "tail policy") and all agreements, documents, or instruments relating thereto.

43.    "*Debtors*" means, collectively, each of the following: Plenty Unlimited Inc.; MJNN LLC; White Farms LLC; Blue Gardens LLC; Bright Agrotech, Inc.; P F2 VA LLC; and Plenty Unlimited Texas LLC.

44.     "*Debtor Release*" means the release set forth in Article VIII.C of the Plan.

45.     "*Definitive Documents*" means (a) the Plan; (b) the Confirmation Order; (c) the Disclosure Statement; (d) the Disclosure Statement Order; (e) the Solicitation Materials; (f) the Plan Supplement; (g) the DIP Loan Documents; (h) the First Day Pleadings, and all orders sought pursuant thereto; (i) Rights Offering Procedures, and any and all documentation required to implement, issue, and distribute the New Money Rights Offering Equity Interests; (j) the New Money Investment Documents; (k) the New Organizational Documents; and (l) any other agreements, documentation or instruments necessary or advisable to implement, consummate, or document the transactions contemplated by the Plan (in each case, including all exhibits, schedules, amendments, modifications, supplements, appendices, annexes, instructions, and attachments thereto). Each Definitive Document shall be acceptable in form in substance to the Plan Sponsors and the DIP Lenders.

46.     "*DIP Agent*" means the administrative agent and collateral agent under the DIP Loan Agreement.

47.     "*DIP Claims*" means any and all Claims arising under, derived from, or based upon the DIP Loan Documents, including all amounts outstanding in respect of principal, interest, fees, expenses, costs, penalties and other charges arising under the DIP Loan Documents, which DIP Claims shall have the priorities set forth in the DIP Loan Agreement and the DIP Order.

48.     "*DIP Facility*" means the senior-secured superpriority debtor-in-possession delayed draw term loan facility for the DIP Loans, entered into on the terms and conditions set forth in the DIP Loan Documents.

49.     "*DIP Facility Collateral*" means the collateral securing the DIP Facility, as set forth more specifically in the DIP Loan Agreement or any security documents relating thereto.

50.     "*DIP Lenders*" means the "Lenders" under and as defined in the DIP Loan Agreement.

51.     "*DIP Loans*" means the Loans under and defined in the DIP Facility.

52.     "*DIP Loan Agreement*" means that certain *Superpriority Senior Secured Debtor-in-Possession Loan Agreement*, among Parent, the other Debtor guarantors party thereto, and the DIP Agent, which sets forth the terms of the DIP Facility, including all exhibits, annexes, and schedules thereto, as the same may be amended, modified, restated or supplemented from time to time in accordance with the terms thereof and the DIP Orders.

53.     "*DIP Loan Documents*" means, collectively, the DIP Motion, the DIP Orders, the DIP Loan Agreement and any other agreements, documents, and instruments delivered or entered into in connection therewith, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents, instruments, financing and other equivalent statements, notices and related documents, as any of the foregoing may be amended, modified, restated, or supplemented from time to time in accordance with the terms thereof and the DIP Orders.

54.     "*DIP Motion*" means the motion filed by the Debtors seeking entry of the DIP Orders, together with all exhibits thereto and any declarations, affidavits, or other documents filed in connection with such motion.

55.     "*DIP Orders*" means, together, the Interim DIP Order and the Final DIP Order.

56.     "*Disbursing Agent*" means, as applicable, the Debtors, Reorganized Debtors, or such other Entity or Entities selected by the Reorganized Debtors, to make or facilitate distributions pursuant to the Plan, which Entity may include the Claims and Noticing Agent.

57.     "*Disclosure Statement*" means the disclosure statement with respect to the Plan, and all exhibits, appendices, and schedules thereto, each as amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof or hereof.

58.     "*Disclosure Statement Order*" means an order of the Bankruptcy Court entered on the docket of the Chapter 11 Cases, approving the Disclosure Statement on either a conditional or final basis as a disclosure statement meeting the applicable requirements of the Bankruptcy Code, and, to the extent necessary, approving the related Solicitation Materials, which order may be the Confirmation Order.

59.     "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest: (1) listed on the Schedules as unliquidated, disputed or contingent, unless a Proof of Claim has been Filed in a liquidated and non-contingent amount and no objection to such Proof of Claim has been timely filed; (2) included in a Proof of Claim as to which an objection or request for estimation has been timely filed, or as to which the Debtor or Reorganized Debtors, as applicable, or other parties in interest, retain the ability to interpose a timely objection or request for estimation; or (3) which is otherwise disputed by the Debtor or Reorganized Debtors, as applicable, in accordance with applicable law and for which the objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order.  Claims that are Allowed by the Plan or that have been Allowed by a Final Order shall not be Disputed Claims.

60.     "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Reorganized Debtors, on or after the Effective Date, with the first such date occurring on or as soon as is reasonably practicable after the Effective Date, upon which the Disbursing Agent shall make distributions to Holders of Allowed Claims or Allowed Interests entitled to receive distributions under the Plan.

61.     "*Distribution Record Date*" means the record date for purposes of making distributions under the Plan on account of Allowed Claims and Allowed Interests, which date shall be on or as soon as is reasonably practicable after the Effective Date.

62.     "*Effective Date*" means, as to the applicable Debtor, the date that is the first Business Day on which (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.B of the Plan have been satisfied or waived in accordance with Article IX.C of the Plan.

63.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

64.     "*Estate*" means as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case.

65.     "*Exchange Act*" means the Securities and Exchange Act of 1934, as amended.

66.     "*Exculpated Parties*" means collectively, and in each case in its capacity as such: (a) the Debtors; (b) each independent director of the Debtors; and (c) any statutory committee appointed in the Chapter 11 Cases and its members.

67.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

68.     "*Existing Common Equity Interests*" means the common Interests in the Parent immediately prior to the consummation of the transactions contemplated in this Plan.

69.     "*Existing Preferred Equity Interests*" means the preferred Interests in the Parent immediately prior to the consummation of the transactions contemplated in this Plan.

70.     "*Exit Facility*" means to the extent applicable, a senior secured facility that may be established on the Effective Date, subject to the Exit Facility Documents.

71.      "*Exit Facility Agent*" means the administrative agent and collateral agent under the Exit Facility Documents.

72.      "*Exit Facility Agreement*" means the definitive agreement governing the Exit Facility and that may be entered into by and among the applicable parties thereto, the Exit Facility Agent, and the exit lenders party thereto, including all exhibits, annexes, and schedules thereto.

73.     "*Exit Facility Documents*" means the definitive documentation governing the Exit Facility, including all agreements, documents, and instruments delivered or entered into in connection therewith, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents, instruments, financing and other equivalent statements, notices, and related documents, as any of the foregoing may be amended, modified, restated, or supplemented from time to time in accordance with the terms hereof and thereof.

74.     "*Exit Facility Lenders*" means the lenders party to the Exit Facility Agreement.

75.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

76.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

77.     "*Final DIP Order*" means an order by the Bankruptcy Court entered on the docket of the Chapter 11 Cases, approving the DIP Facility and related relief on a final basis, which final DIP Order shall be acceptable, in form and substance to the DIP Lenders.

78.    "*Final Order*" means an order or judgment of the Bankruptcy Court, or court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, as entered on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing will have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules (or analogous rules applicable in another court of competent jurisdiction), or sections 502(j) or 1144 of the Bankruptcy Code, may be filed with respect to such order will not preclude such order from being a Final Order.

79.    "*First Day Pleadings*" means the pleadings and related documentation requesting certain emergency relief, or supporting the relief for such relief, Filed by the Debtors on or around the Petition Date and heard at the "first day" hearing.

80.    "*General Unsecured Claim*" means any Claim against any of the Debtors that is not (a) an Administrative Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) a DIP Claim; (e) an Other Secured Claim; (f) an Other Priority Claim; (g) a Bridge Facility Claim; (h) Virginia Mechanic's Lien Claim; or (i) an Intercompany Claim.

81.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

82.    "*GUC Cash Pool*" means $250,000 in Cash, which amount shall be ratably reduced in respect of any Holders of General Unsecured Claims that elect to participate in the Rights Offering.

83.    "*GUC Rights Offering Amount*" means a portion of the Rights Offering that shall be available for participation to Holders of Allowed General Unsecured Claims, as specified in the Rights Offering Procedures, which amount shall be commensurate with the aggregate amount of Allowed General Unsecured Claims relative to the aggregate amount and portion of Allowed Virginia Mechanic's Lien Claims and Allowed Bridge Facility Claims that are receiving the right to participate in the Rights Offering.

84.    "*Holder*" means a Person or an Entity, as applicable, holding a Claim against or an Interest in any of the Debtors.

85.    "*Impaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

86.    "*Intercompany Claim*" means any Claim against a Debtor or an Affiliate of a Debtor held by another Debtor or an Affiliate of a Debtor.

87.    "*Intercompany Interest*" means an Interest in a Debtor held by another Debtor.

9

88.     "*Interests*" means, collectively, the shares (or any class thereof), common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (in each case whether or not arising under or in connection with any employment agreement).

89.     "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

90.     "*Interim DIP Order*" means an order by the Bankruptcy Court entered on the docket of the Chapter 11 Cases, approving the DIP Facility and related relief on an interim basis, which Interim DIP Order shall be acceptable to the DIP Lenders.

91.     "*IRS*" means the United States Internal Revenue Service.

92.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time.

93.     "*Law*" means any federal, state, local, or foreign law (including, in each case, any common law), statute, code, ordinance, rule, regulation, order, ruling, assessment, writ or other legal requirement,  or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a Governmental Entity of competent jurisdiction (including the Bankruptcy Court).

94.     "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code.

95.     "*New Board*" means the boards of directors or members of the applicable governing bodies of the applicable Reorganized Debtors, and as set forth in the Plan Supplement.

96.     "*New Equity Interests*" means the common, preferred or other equity interests in the Reorganized Parent to be issued on the Effective Date or as otherwise permitted pursuant to the New Organizational Documents.

97.     "*New Money Investment*" means the new money investment to be consummated by one or more Reorganized Debtors on the Effective Date in accordance with the terms of the Plan in the form of either the New Money Private Placement or the issuance of the Exit Facility.

98.     "*New Money Investment Documents*" means, as applicable, the Exit Facility Documents or the New Money Private Placement Documents.

99.     "*New Money Private Placement Equity Interests*" means, to the extent applicable, the shares of New Equity Interests issued in connection with the New Money Private Placement, which New Money Private Placement Equity Interests shall be subject to dilution on account of the New Money Rights Offering Equity Interests. At the election of the Plan Sponsors, the New Money Private Placement may be raised through a rights offering.

100.    "*New Money Private Placement*" means, to the extent applicable, the new money private placement for not more than 50% of the New Equity Interests to be consummated by one or more of the Reorganized Debtors on the Effective Date in accordance with the terms of the Plan and the New Money Private Placement Documents.

101.    "*New Money Private Placement Documents*" means, to the extent applicable, any and all other agreements, documents, and instruments delivered or entered into in connection with, or otherwise governing, the New Money Private Placement, including the new money equity capital raise procedures, subscription forms, and any other materials distributed in connection with the New Money Private Placement.

102.    "*New Money Rights Offering Equity Interests*" means, the shares of New Equity Interests issued in connection with the Rights Offering.

103.    "*New Organizational Documents*" means, collectively, the Organizational Documents of the Reorganized Debtors.

104.    "*Non-Released Parties Schedule*" means a schedule of Persons that are excluded from the definition of "Released Party", which schedule shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time prior to the Combined Hearing.

105.    "*Organizational Documents*" means, with respect to any Person other than a natural person, the organizational documents of such Person, including certificates of incorporation, certificates of formation, limited liability company agreements, partnership agreements, stockholders or shareholders agreements, operating agreements, equity subscription or purchase agreements, charters or bylaws, articles of association, memorandum of association or other constituent documents.

106.    "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

107.    "*Other Secured Claim*" means any Claim against a Debtor where, pursuant to section 506(a) of the Bankruptcy Code, the Claim is secured by a valid, perfected, and enforceable Lien that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law in or upon any right, title, or interest of the Debtor in and to property of the Estate, to the extent of the value of the Debtor's interest in such property as of the relevant determination date, including, as applicable, any Claim in connection with any mechanic's or materialman's Lien filed against real property other than a Virginia Mechanic's Lien Claim.

108.    "*Parent*" means Plenty Unlimited, Inc.

109.    "*Person*" means an individual, a partnership, a joint venture, a limited liability company, a corporation, a trust, an unincorporated organization, a group, a Governmental Entity, or any legal entity or association.

110.   "*Petition Date*" means the first date upon which any of the Debtors commences a Chapter 11 Case.

111.   "*Plan Distribution*" means a payment or distribution of consideration to holders of Allowed Claims and Allowed Interests under the Plan.

112.   "*Plan Sponsors*" means, collectively, (i) One Madison Group – Plenty II, LLC, and (ii) SVF II Pacific (DE) LLC and/or one or more of their Affiliates or designees.

113.   "*Plan Supplement*" means the compilation of documents, forms of documents, term sheets, agreements, schedules, or exhibits to the Plan (together with any amendments, supplements, or modifications thereto) that will be filed by the Debtors with the Bankruptcy Court prior to the Confirmation Hearing, which shall include: (i) the New Organizational Documents for the Reorganized Parent; (ii) the slate of directors, managers, or persons with similar authority to be appointed to the New Board of the Reorganized Parent, to the extent known and determined; (iii) with respect to the members of the New Board of the Reorganized Parent, to the extent known and determined, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (iv) the Schedule of Retained Causes of Action to be vested in the Reorganized Parent and/or the other Reorganized Debtors; (v) the Rejected Executory Contracts and Unexpired Leases Schedule, and (vi) to the extent applicable, the Exit Facility Agreement; and (vii) the Non-Released Parties Schedule.  The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement prior to the Effective Date. Any Plan Supplement shall be in acceptable to the Plan Sponsors.

114.   "*Plan*" means this joint chapter 11 plan of reorganization of the Debtors, including all exhibits, annexes, and schedules thereto (including the Plan Supplement), as such documents may be amended, supplemented, or modified from time to time in accordance with the terms hereof and thereof.

115.   "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

116.   "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

117.   "*Professional*" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.  For the avoidance of doubt, "Professionals" does not include the Prepetition Secured Parties Advisors (as defined in the DIP Orders).

118.   "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals reasonably estimate they have incurred or will incur in rendering services to the Debtors as set forth in Article II.C.3 of the Plan.

119.    "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

120.    "*Professional Fee Account*" means an account to be funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

121.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

122.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall not be discharged hereunder and the holder's legal, equitable, and contractual rights on account of such Claim or Interest shall remain unaltered by Consummation in accordance with section 1124(1) of the Bankruptcy Code.

123.    "*Rejected Executory Contracts and Unexpired Leases Schedule*" means a schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, which schedule shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time in accordance with the terms hereof and with the prior written consent of the Plan Sponsors in their discretion.

124.    "*Related Party*" means, with respect to any Entity, each of, and in each case in its capacity as such, such Entity's current and former directors, managers, officers, committee members, members of any governing body, advisory board members, members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, management companies, fund advisors or managers, predecessors, participants, successors, assigns, representatives, subsidiaries, Affiliates, partners, limited partners, general partners, principals, employees, agents, trustees, financial advisors, attorneys (not including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an entity), accountants, investment bankers, investment advisors, consultants, and other professionals and advisors and any such Related Party's respective heirs, executors, estates, and nominees.

125.    "*Released Party*" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) the Plan Sponsors; (d) the Bridge Facility Lenders and Bridge Facility Collateral Agent; (e) the DIP Lenders and the DIP Agent; (f) the Exit Facility Lenders and the Exit Facility Agent, if applicable; (g) New Money Investment providers; (h) each Releasing Party; (i) each current and former Affiliate of each Entity in clause (a) through the following clause (j); and (j) each Related Party of each Entity in clause (a) through this clause (j); *provided that*, notwithstanding the foregoing, such Persons listed on the Non-Released Parties Schedule shall not be a Released Party.

126.    "*Releasing Party*" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) the Plan Sponsors; (d) the Bridge Facility Lenders and Bridge Facility Collateral Agent; (e) the DIP Lenders and DIP Agent; (f) the Exit Facility Lenders and the Exit Facility Agent; (g) New Money Investment providers; (h) all Holders

of Claims or Interests that vote to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (i) all Holders of Claims or Interests that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided in the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (j) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (k) all Holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not affirmatively opt out of the releases provided in the Plan; (l) each current and former Affiliate of each Entity in clause (a) through the following clause (m); and (m) each Related Party of each Entity in clause (a) through this clause (m) solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through clause (m); *provided* that, in each case, an Entity shall not be a Releasing Party if it (x) elects to opt out of the Third-Party Release or (y) timely objects to the Third-Party Release through a formal objection Filed on the docket of the Chapter 11 Cases that is not resolved before Confirmation.

127.    "*Remaining Amount*" has the meaning set forth in Article IV.I.

128.    "*Reorganized Debtors*" means the Reorganized Parent and each of the other Debtors as reorganized as of the Effective Date in accordance with the Plan, after giving effect to the Restructuring Transactions.

129.    "*Reorganized Parent*" means an Entity that shall (i) issue 100% of the New Equity Interests and (ii) own all of the equity interests in each other Reorganized Debtor (directly or indirectly).

130.    "*Restructuring*" means the financial and operational restructuring of the Debtors, the principal terms of which are set forth in this Plan (including, for the avoidance of doubt, the Plan Supplement).

131.    "*Restructuring Transactions*" means any transaction and any actions as may be necessary or appropriate to effect a restructuring of the Debtors' respective businesses or a corporate restructuring of the overall corporate structure of the Debtors on the terms set forth in this Plan, the issuance of all securities, notes, warrants, instruments, agreements, certificates, and other documents required to be issued or executed pursuant to the Plan, one or more inter-company mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, liquidations, or other corporate transactions, as described in Article IV.B of the Plan.

132.    "*Rights Offering*" means the new money equity capital raise to be consummated by the Reorganized Parent on the Effective Date for at least 50% of the New Equity Interests in accordance with the Rights Offering Procedures, on terms and conditions described in Article IV.I of the Plan.

133.    "*Rights Offering Equity Interest Price*" has the meaning set forth in Article IV.I of the Plan.

134.    "*Rights Offering Procedures*" means the procedures governing the Rights Offering.

135.   "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

136.   "*Secured Claim*" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code to the extent of the amount subject to setoff.

137.   "*Securities Act*" means the Securities Act of 1933, as amended.

138.   "*Securities Rules*" means Rule 501(a)(1), (2), (3), (5), (7), (8), (9), (12) and (13) of Regulation D under the Securities Act.

139.   "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act or section 101(49) of the Bankruptcy Code.

140.   "*Solicitation*" means the solicitation of votes to accept or reject the Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code.

141.   "*Solicitation Materials*" means all documents, ballots, forms, and other materials provided in connection with Solicitation of the Plan (other than the Disclosure Statement).

142.   "*Stalking Horse Purchase Agreement*" means the purchase agreement to be entered into by the Debtors and the Stalking Horse Bidder (as defined in the Bid Procedures) in accordance with the Bid Procedures.

143.   "*Subordinated Claim*" means any Claim against the Debtors that is subject to subordination under section 509(c), section 510(b), or section 510(c) of the Bankruptcy Code, including any Claim for reimbursement, indemnification, or contribution (except indemnification or reimbursement Claims assumed hereunder).  For the avoidance of doubt, Subordinated Claim includes any Claim arising out of or related to any agreement for the purchase or sale of securities of the Debtors or any of their Affiliates or any agreements related or ancillary to such agreement for the purchase or sale of securities of the Debtors or any of their Affiliates.

144.   "*Third-Party Release*" means the release set forth in Article VIII.D of the Plan.

145.   "*Transaction Expenses*" means all reasonable and documented fees and out-of-pocket expenses of the Plan Sponsors and DIP Lenders related to or incurred in connection with the Restructuring Transactions and the Chapter 11 Cases, whether arising before or after the Petition Date (including the reasonable and documented fees and out-of-pocket expenses of the advisors to each of Plan Sponsors and the DIP Lenders accrued since the inception of such engagements).

146.   "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

147.     "*Unimpaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

148.     "*Unsecured Claim*" means any Claim that is not a Secured Claim.

149.     "*Virginia Mechanic's Lien*" means any Lien pursuant to Virginia's mechanic's and materialmen's lien statute.

150.     "*Virginia Mechanic's Lien Claim*" means any Claim arising from a Virginia Mechanic's Lien asserted or that could be asserted against the Virginia Property.

151.     "*Virginia Mechanic's Lien Claims Rights Offering Amount*" means a portion of the Rights Offering that shall be available for participation by Holders of Allowed Virginia Mechanic's Lien Claims, as specified in the Rights Offering Procedures, which amount shall be commensurate with the aggregate amount of Allowed Virginia Mechanic's Lien Claims relative to the aggregate amount and portion of Allowed Bridge Facility Claims and Allowed General Unsecured Claims that are receiving the right to participate in the Rights Offering.

152.     "*Virginia Property*" means the real property generally known as 13500 North Enon Church Road, Chester, VA 23836.

B.     *Rules of Interpretation.*

For purposes of this Plan:

(a)     in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender;

(b)     capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form;

(c)     unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(d)     unless otherwise specified, any reference herein to an existing document, schedule, or exhibit shall mean such document, schedule, or exhibit, as it may have been or may be amended, restated, supplemented, or otherwise modified from time to time; *provided* that any capitalized terms herein which are defined with reference to another agreement are defined with reference to such other agreement as of the date of the Plan, without giving effect to any termination of such other agreement or amendments to such capitalized terms in such other agreement following the date hereof;

(e)     any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns;

(f)      any references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable limited liability company Laws;

(g)      unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto;

(h)      unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement;

(i)      unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

(j)      captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

(k)      unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply;

(l)      any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be;

(m)      all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system;

(n)      all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated;

(o)      the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation";

(p)      references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable;

(q)      any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and

(r)      all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal Law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the Laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing Law of such agreement shall control), and corporate governance matters; *provided* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the Laws of the state, province, or country of incorporation or formation of the relevant Debtor or the Reorganized Debtors, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.      *Nonconsolidated Plan.*

Although for purposes of administrative convenience and efficiency this Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against and Interests in the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

H.      *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan (including the Plan Supplement), the Confirmation Order shall control.

I.      *Consultation, Information, Notice, and Consent Rights.*

Notwithstanding anything herein to the contrary, the Plan, all exhibits to the Plan, and the Plan Supplement, and all other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be acceptable to the Plan Sponsors and DIP Lenders.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP CLAIMS,
## PRIORITY CLAIMS, AND TRANSACTION EXPENSES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.      *Administrative Claims.*

Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code, unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, or otherwise provided for under the Plan, each Holder of an Allowed Administrative Claim (other than holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such holder and the Debtors or the Reorganized Debtors, as applicable, and, in each case, with the consent of the Plan Sponsors; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.  Nothing in the foregoing or otherwise in this Plan shall prejudice the Debtors' or the Reorganized Debtors' rights and defenses regarding any asserted Administrative Claim.

B.      *DIP Claims*.

On the Effective Date, in full and final satisfaction of all Allowed DIP Claims, the DIP Obligations, including, for the avoidance of doubt, all Claims in respect of the outstanding principal amount of all DIP Loans and any accrued but unpaid interest thereon, including any outstanding fees, premiums, costs, or expenses, shall be repaid in full in Cash.

C.      *Professional Fee Claims.*

    1.   <u>Final Fee Applications and Payment of Professional Fee Claims</u>.

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Account, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date.

    2.   <u>Professional Fee Account</u>.

On the Effective Date, the Reorganized Debtors shall, in consultation with the Plan Sponsors, establish (to the extent not already established) and fund the Professional Fee Account with Cash equal to the Professional Fee Amount, which shall be funded by the Reorganized Debtors.  The Professional Fee Account shall be maintained solely for the Professionals.  The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Reorganized Debtors from the Professional Fee Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  Any amount remaining in the Professional Fee Account, after all Allowed Professional Fee Claims have been paid in full, shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court.

    3.   <u>Professional Fee Amount</u>.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than two (2) Business days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases.  If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

    4.   <u>Post-Confirmation Date Fees and Expenses</u>.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E.      *Payment of Transaction Expenses.*

The Transaction Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases), without any requirement to file a fee application with the Bankruptcy Court, without the need for itemized time detail, or without any requirement for Bankruptcy Court review or approval. All Transaction Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least two (2) Business Days before the anticipated Effective Date; *provided* that such estimates shall not be considered an admission or limitation with respect to such Transaction Expenses. On or as soon as practicable after the Effective Date, final invoices for all Transaction Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors or Reorganized Debtors, as applicable. In addition, the Debtors and/or the Reorganized Debtors, as applicable, shall continue to pay, when due, pre- and post-Effective Date Transaction Expenses related to implementation, consummation, and defense of the Plan, whether incurred before, on, or after the Effective Date, without any requirement for Bankruptcy Court review or approval.

Notwithstanding anything to the contrary contained herein, any unpaid Claim payable on account of the Transaction Expenses that the Debtors are obligated to pay hereunder or under any of the DIP Loan Documents or Bid Procedures Documents and for which the Debtors have received an invoice, shall constitute an Allowed Administrative Claim and shall be paid on a current basis in full in Cash on the Effective Date or as reasonably practicable thereafter, or to the extent accrued after the Effective Date, on a current basis in full in Cash as invoiced. Nothing herein shall require the Plan Sponsors, DIP Lenders, DIP Agent or Stalking Horse Bidder, as applicable, to file applications, a Proof of Claim or otherwise seek approval of the Bankruptcy Court as a condition to payment of such Allowed Administrative Claims.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests.*

This Plan constitutes a separate Plan proposed by each Debtor. Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest fits within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest fits within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions

under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| **Class** | **Type of Claim or Interest** | **Impairment** | **Entitled to Vote** |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | No (Deemed to accept) |
| Class 2 | Other Priority Claims | Unimpaired | No (Deemed to accept) |
| Class 3 | Bridge Facility Claims | Impaired | Yes |
| Class 4 | Virginia Mechanic's Lien Claims | Impaired | Yes |
| Class 5 | General Unsecured Claims | Impaired | Yes |
| Class 6 | Intercompany Claims | Impaired / Unimpaired | No (Deemed to accept or reject) |
| Class 7 | Existing Preferred Equity Interests | Impaired | Yes |
| Class 8 | Intercompany Interests | Impaired / Unimpaired | No (Deemed to accept or reject) |
| Class 9 | Existing Common Equity Interests | Impaired | No (Deemed to reject) |

B.      *Treatment of Claims and Interests.*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.   Class 1 – Other Secured Claims

(a)     *Classification*: Class 1 consists of all Other Secured Claims.

(b)     *Treatment*: The legal, equitable, and contractual rights of the Holders of Allowed Other Secured Claims are unaltered by the Plan.  Each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor:

(i)      payment in full in Cash of its Allowed Other Secured Claim;

(ii)     the collateral securing its Allowed Other Secured Claim;

(iii)    Reinstatement of its Allowed Other Secured Claim; or

(iv)    such other treatment that renders its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)    *Voting*: Class 1 is Unimpaired under the Plan.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.    Class 2 – Other Priority Claims

(a)    *Classification*: Class 2 consists of all Other Priority Claims.

(b)    *Treatment*: The legal, equitable, and contractual rights of the Holders of Allowed Other Priority Claims are unaltered by the Plan.  Each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash.

(c)    *Voting*: Class 2 is Unimpaired under the Plan.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.    Class 3 – Bridge Facility Claims

(a)    *Classification*: Class 3 consists of all Bridge Facility Claims.

(b)    *Allowance*: On the Effective Date, Bridge Facility Claims shall be deemed Allowed in the aggregate principal amount of $8,675,000, plus all interest, fees, premiums, expenses, costs, charges, and other amounts due (if any) under the Bridge Facility Documents.

(c)    *Treatment*: On the Effective Date, solely with the consent of the Holders thereof, and as part of the settlements and compromises contemplated by this Plan on the terms set forth herein, each Holder of the existing Bridge Facility Claims shall have the right to participate *Pro Rata* in the Rights Offering in accordance with Article IV.I of the Plan.

(d)    *Voting*: Class 3 is Impaired under the Plan.  Holders of Bridge Facility Claims are entitled to vote to accept or reject the Plan.

4.    Class 4 – Virginia Mechanic's Lien Claims

(a)    *Classification*: Class 4 consists of all Virginia Mechanic's Lien Claims.

(b)    *Treatment*:

On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Virginia Mechanic's Lien Claim

and the Debtors agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Virginia Mechanic's Lien Claim, each Holder will receive:

    (i)        Cash in an amount equal to 28.5 percent of such Allowed Virginia Mechanic's Lien Claim; and

    (ii)       the right to participate *Pro Rata* in the Rights Offering in accordance with Article IV.I of the Plan.

(c)    *Voting:* Class 4 is Impaired under the Plan. Holders of Virginia Mechanic's Lien Claims are entitled to vote to accept or reject the Plan.

5.    <u>Class 5 – General Unsecured Claims</u>

(a)    *Classification*: Class 5 consists of all General Unsecured Claims.

(b)    *Treatment*: On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed General Unsecured Claim, each Holder will receive its *Pro Rata* share of the GUC Cash Pool or, at such Holder's election, in lieu of its *Pro Rata* share of the GUC Cash Pool, the right to participate *Pro Rata* in the Rights Offering in accordance with Article IV.I of the Plan.

(c)    *Voting:* Class 5 is Impaired under the Plan. Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.    <u>Class 6 – Intercompany Claims</u>

(a)    *Classification*: Class 6 consists of all Intercompany Claims.

(b)    *Treatment*: Each Allowed Intercompany Claim shall be, at the option of the applicable Debtor, either:

    (i)       Reinstated;

    (ii)      canceled, released, and extinguished, and will be of no further force or effect; or

    (iii)    otherwise addressed at the option of each applicable Debtor such that Holders of Intercompany Claims will not receive any distribution on account of such Intercompany Claims.

(c)    *Voting*: Class 6 is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to

section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

7.  <u>Class 7 – Existing Preferred Equity Interests</u>

    (a)    *Classification*: Class 7 consists of all Existing Preferred Equity Interests.

    (b)    *Treatment*: On the Effective Date, except to the extent that a Holder of an Existing Preferred Equity Interests agrees to less favorable treatment for such Holder, in full and final satisfaction of the Existing Preferred Equity Interests, each Holder of Existing Preferred Equity Interests shall receive the right to participate *Pro Rata* in any Remaining Amounts.

    (c)    *Voting*: Class 7 is Impaired under the Plan.  Holders of Existing Preferred Equity Interests are entitled to vote to accept or reject the Plan.

8.  <u>Class 8 – Intercompany Interests</u>

    (a)    *Classification*: Class 8 consists of all Intercompany Interests.

    (b)    *Treatment*:  Each Allowed Intercompany Interest shall be, at the option of the applicable Debtor, either:

        (i)    Reinstated;

        (ii)    canceled, released, and extinguished, and will be of no further force or effect; or

        (iii)    otherwise addressed at the option of each applicable Debtor such that Holders of Intercompany Interests will not receive any distribution on account of such Intercompany Interests.

    (c)    *Voting*: Class 8 is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

9.  <u>Class 9– Existing Common Equity Interests</u>

    (a)    *Classification*: Class 9 consists of all Existing Common Equity Interests.

    (b)    *Treatment*: On the Effective Date, all Existing Common Equity Interests shall be canceled, release and extinguished and will be of no further force or effect.

    (c)    *Voting*: Class 9 is Impaired and is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including, all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D.      *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.      *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

F.      *Intercompany Interests.*

To the extent Intercompany Interests are Reinstated under the Plan, such reinstatement or any distribution made on account of such reinstatement shall not be deemed to be a distribution to the Holders of such Intercompany Interests on account of such Intercompany Interests, but, rather, shall be for the purposes of administrative convenience and due to the importance of maintaining the prepetition corporate structure for the ultimate benefit of the holders of New Equity Interests and in consideration for the Debtors' (or Reorganized Debtors', as applicable) agreement under the Plan to make certain distributions to the Holders of Allowed Claims.

G.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan.  The Debtors may seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right, subject to the prior consent of the Plan Sponsors, to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

*H.*      *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

*I.*      *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Any such contractual, legal, or equitable subordination rights shall be settled, compromised, and released pursuant to the Plan.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

*A.*      *General Settlement of Claims and Interests.*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan, whether under any provision of chapter 5 of the Bankruptcy Code, on any equitable theory (including equitable subordination, equitable disallowance, or unjust enrichment) or otherwise. Without limitation, the Plan constitutes a settlement with respect to any Virginia Mechanic's Liens or Virginia Mechanic's Liens Claims and any related Executory Contract between the Holder of a Virginia Mechanic's Lien Claim and the Debtors, pursuant to which the Holders of such Claims and Liens and counterparties to such Executory Contracts agree or are deemed to agree to the treatment provided by the Plan.

The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors and their Estates. Subject to Article VI hereof, all distributions made to holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

*B.*      *Restructuring Transactions.*

On or before the Effective Date, the applicable Debtors or the Reorganized Debtors (and their respective officers, directors, members, or managers (as applicable)) shall enter into and shall take any actions as may be necessary or appropriate to effect the Restructuring Transactions and

may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan (and without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan).  These actions to implement the Restructuring Transactions may include: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable Law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial Law; (4) the execution, delivery, and filing, as applicable, of the New Organizational Documents, and any certificates or articles of incorporation, bylaws, or such applicable formation documents (if any) of each Reorganized Debtor (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors); (5) the execution and delivery of the Exit Facility Documents, if applicable, and any filing and/or other action related thereto; (6) pursuant to the Rights Offering Procedures, the implementation of the Rights Offering, and the issuance of New Equity Interests in connection therewith; and (7) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable Law in connection with the Plan.  All Holders of Claims and Interests receiving distributions pursuant to the Plan and all other necessary parties in interest, including any and all agents thereof, shall prepare, execute, and deliver any agreements or documents, including any subscription agreements, and take any other actions as the Debtors (with the consent of the Plan Sponsors) may determine are necessary or advisable, including by voting and/or exercising any powers or rights available to such Holder, including at any board, or creditors', or shareholders' meeting (including any special meeting), to effectuate the provisions and intent of the Plan.

The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors shall issue all Securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Restructuring Transactions.

C.      *Reorganized Debtors.*

On the Effective Date, the New Board shall be established, and the Reorganized Debtors shall adopt their New Organizational Documents.  The Reorganized Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan.  Cash payments to be made pursuant to the Plan will be made by the Debtors or Reorganized Debtors, as applicable.  The

Debtors and Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Debtors or Reorganized Debtors, as applicable, to satisfy their obligations under the Plan.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

From and after the Effective Date, the Reorganized Debtors, subject to any applicable limitations set forth in any post-Effective Date agreement, shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing, subject to the New Organizational Documents and the Exit Facilities Documents, as the boards of directors of the applicable Reorganized Debtors deem appropriate.

D.      *Continued Corporate Existence.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable Law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under the Plan or otherwise, in each case, consistent with the Plan, and to the extent such documents are amended in accordance therewith, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal Law).  After the Effective Date, the respective certificate(s) of incorporation, bylaws, limited liability company agreement(s), or other formation and governance documents of one or more of the Reorganized Debtors may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  After the Effective Date, one or more of the Reorganized Debtors may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.      *Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in the Confirmation Order, the Plan, or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan or Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

F.     *Cancellation of Existing Securities and Agreements.*

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan or the Plan Supplement, on the Effective Date, all agreements, instruments, and other documents evidencing any Claim or Interest (other than for (i) agreements, instruments, notes, certificates, indentures, mortgages, security documents, and other instruments or documents governing, relating to, and/or evidencing (a) certain Intercompany Interests that are not modified by this Plan, and (b) any Allowed Claim that is Reinstated under this Plan, and (ii) the Exit Facility Documents) and any rights of any holder in respect thereof shall be deemed canceled and of no force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged.  The holders of or parties to such canceled instruments, Securities, and other documentation shall have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan.

G.     *Cancellation of Certain Existing Security Interests.*

Upon the payment or other satisfaction of an Allowed Secured Claim (including Allowed DIP Claims) pursuant to the Plan, or promptly thereafter, except as expressly provided herein, all mortgages, deeds of trust, charges, encumbrances, Liens, pledges, or other security interests against any property of the Estates (wherever recorded, filed, or otherwise noticed under applicable Law (whether domestic or foreign)) shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, charges, encumbrances, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed (and is hereby directed), at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases or other applicable instruments and documentation.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

To the extent that any Holder of an Allowed Secured Claim (including Allowed DIP Claims) that has been satisfied or discharged in full pursuant to the Plan, or any agent for any such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Allowed Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Reorganized Debtors that are necessary or desirable to record, evidence or effectuate the cancellation, release, and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

*H.*     *Sources of Consideration for Plan Distributions.*

The Debtors or Reorganized Debtors, as applicable, shall fund distributions under the Plan with the (i) Debtors' Cash on hand and (ii) Cash proceeds from the Rights Offering and the New Money Investment.

Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. The issuance, distribution, or authorization, as applicable, of certain securities in connection with the Plan, including the New Equity Interests will be exempt from SEC registration to the fullest extent permitted by law, as described more fully herein.

*I.*     *Rights Offering.*

On the Effective Date, the Reorganized Parent shall consummate the Rights Offering pursuant to which eligible participants may subscribe to purchase New Money Rights Offering Equity Interests in an amount of at least $30 million of the New Equity Interests. The price per share of the New Money Rights Offering Equity Interests shall be based on an indicative enterprise value of the Parent as set forth in the Rights Offering Procedures (the "<u>Rights Offering Equity Interest Price</u>").

Subscription rights to participate in the Rights Offering with respect to the purchase of New Rights Offering Equity Interests shall be offered as follows:

1.  An amount up to the Bridge Facility Claims Rights Offering Amount shall be offered for ratable participation by Holders of Bridge Facility Claims at the Rights Offering Equity Interest Price.

2.  An amount up to the Virginia Mechanic's Lien Claims Rights Offering Amount shall be offered for ratable participation by Holders of Virginia Mechanic's Lien Claims, at the Rights Offering Equity Interest Price.

3.  An amount up to the GUC Rights Offering Amount shall be offered for ratable participation by Holders of General Unsecured Claims at the Rights Offering Equity Interest Price.

4.  The amount equal to the New Money Rights Offering Equity Interests that are not subscribed for by Holders of Virginia Mechanic's Lien Claims, General Unsecured Claims or Bridge Facility Claims (the "<u>Remaining Amount</u>") shall be offered for ratable participation by Holders of Existing Preferred Equity Interests at the Rights Offering Equity Interest Price. Each Holder of Existing Preferred Equity Interests shall have *Pro Rata* oversubscription rights with respect to any Remaining Amounts that are not subscribed for by Holders of Existing Preferred Equity Interests.

The Rights Offering will be conducted in accordance with the Rights Offering Procedures to be Filed with the Bankruptcy Court. The Rights Offering Procedures will set forth terms and

31

conditions for participating in the Rights Offering. Only Holders of Claims as of the Petition Date will be entitled to participate in the Rights Offering. Participation in the Rights Offering shall be offered in minimum increments of $500,000 of New Money Rights Offering Equity Interests. In addition, as set forth more fully in the Rights Offering Procedures, in order to participate in the Rights Offering, each participating Holder must:

1.  represent and certify to the Debtors that it is a "qualified institutional buyer" as defined in Rule 144A under the Securities Act or an "accredited investor" as defined in the Securities Rules;

2.  provide to a segregated escrow account established by the Debtors, a Cash deposit equal to 10% of the aggregate Rights Offering Equity Interest Price applicable to the number of New Money Rights Offering Equity Interests subscribed for by such Holders; and

3.  with respect to Holders participating in the Rights Offering in respect of such Holder's Virginia Mechanic's Lien Claim, General Unsecured Claim or Bridge Facility Claim, represent and certify to the Debtors that such Holder is participating in the Rights Offering as a result of being a "qualified creditor" as such term is defined under section 1.382-9(d)(1) of the United States Treasury Regulations.

Confirmation of the Plan shall be deemed approval of the Rights Offering and the Rights Offering Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, and authorization for the Reorganized Debtors to enter into and execute the Rights Offering Documents as may be required to effectuate the treatment afforded by the New Money Rights Offering Equity Interests. All New Money Rights Offering Equity Interests issued pursuant to the Plan (including the Rights Offering) shall be duly authorized, validly issued and non-assessable.

For the avoidance of doubt, the issuance of the New Money Rights Offering Equity Interests pursuant to the Rights Offering shall be exempt from the registration requirements of the Securities Act as a result of Bankruptcy Code section 1145(a) to the maximum extent permitted by law.

The proceeds of the Rights Offering shall be used by the Debtors or Reorganized Debtors, as applicable, to fund payments under the Plan and for general corporate and strategic purposes.

J.    *New Money Private Placement*

To the extent applicable, on the Effective Date, the Reorganized Parent may consummate the New Money Private Placement pursuant to which the Plan Sponsors (or such other parties as agreed by the Plan Sponsors) shall purchase New Money Private Placement Equity Interests in an amount to be determined, which amount shall be less than the aggregate amount of the Rights Offering. The price per share of the New Private Placement Equity Interests shall be based on an indicative enterprise value of the Parent to be agreed (the "New Private Placement Equity Interest Price").

Confirmation of the Plan shall be deemed approval of the New Money Private Placement and the New Money Private Placement Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, and authorization for the Reorganized Debtors to enter into and execute the New Money Private Placement Documents as may be required to effectuate the treatment afforded by the New Money Private Placement Equity Interests. All New Money Private Placement Equity Interest issued pursuant to the Plan shall be duly authorized, validly issued and non-assessable.

For the avoidance of doubt, the New Money Private Placement Equity Interests will be issued in a private placement exempt from registration under section 5 of the Securities Act pursuant to section 4(a)(2) and/or Regulation D thereunder and will constitute "restricted securities" for purposes of the Securities Act.

K.      *Certain Securities Law Matters.*

The offering, issuance (or entry into), and distribution of the New Equity Interests (including the New Money Rights Offering Equity Interests issued pursuant to the Rights Offering and the New Money Private Placement Equity Interests), the subscription rights to participate in the Rights Offering and all other Securities entered into and/or issued in connection with the Plan (the "Plan Securities"), shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable Law requiring registration prior to the offering, issuance, distribution, or sale of Securities to the maximum extent permitted by Law, in accordance with, and pursuant to, (i) section 1145 of the Bankruptcy Code, (ii) section 4(a)(2) of the Securities Act and/or Regulation D thereunder or Regulation S under the Securities Act, and/or (iii) any other available exemption from registration, as applicable.

In addition, New Equity Interests issued in connection with the Plan under section 1145 of the Bankruptcy Code (1) will not be "restricted securities" as defined in rule 144(a)(3) under the Securities Act and (2) will, subject to any limitations set forth in the New Organizational Documents of Reorganized Parent, be freely tradable and transferable in the United States by a recipient thereof that (i) is an entity that is not an "underwriter" as defined in section 1145(b)(1) of the Bankruptcy Code, (ii) is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (iii) has not been such an "affiliate" within 90 days of the time of the transfer, and (iv) has not acquired such securities from an "affiliate" within one year of the time of transfer.

The issuance of the New Equity Interests in connection with the Plan shall not constitute an invitation or offer to sell, or the solicitation of an invitation or offer to buy, any securities in contravention of any applicable Law in any jurisdiction. No action has been taken, nor will be taken, in connection with the Plan in any jurisdiction that would permit a public offering of any of the Plan Securities in any jurisdiction where such action for that purpose is required.

The New Money Private Placement Equity Interests, and to the extent issuance under section 1145(a) of the Bankruptcy Code is unavailable, the other New Equity Interests (including, to the extent applicable, New Money Rights Offering Equity Interests issued to holders of Existing Preferred Equity Interests pursuant to the Rights Offering), will be issued without registration

33

under the Securities Act in reliance upon section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder or Regulation S promulgated thereunder. To the extent issued in reliance on section 4(a)(2) of the Securities Act or Regulation D thereunder or Regulation S promulgated thereunder, such securities will be "restricted securities" subject to resale restrictions and may be resold, exchanged, assigned or otherwise transferred only pursuant to registration, or an applicable exemption from registration under the Securities Act and other applicable law and subject to any limitations set forth in the New Organizational Documents of Reorganized Parent.

The Reorganized Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the Plan Securities under applicable securities Laws in connection with the Plan.  Notwithstanding anything to the contrary in the Plan, no Entity shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the Plan Securities are exempt from registration, and any transfer agent, or other similarly situated agent, trustee, or other non-governmental Entity shall accept and rely upon the Plan and the Confirmation Order in lieu of a legal opinion for purposes of determining whether the initial offer and sale of the New Equity Interests were exempt from registration under section 1145(a) of the Bankruptcy Code, and whether the New Equity Interests were, under the Plan, validly issued, fully paid, and non-assessable.

*L.      New Equity Interests.*

In connection with the Restructuring Transactions, the offering, issuance, and distribution of the New Equity Interests by Reorganized Parent contemplated by this Plan is hereby authorized without the need for any further corporate action or without any further action by the Holders of Claims or Interests.  The Reorganized Debtors shall be authorized to issue a certain number of shares, units or equity interests (as the case may be based on how the New Equity Interests are denominated and the identity of the Reorganized Debtor issuing such shares, units, or equity interests) of New Equity Interests required to be issued under the Plan and pursuant to their New Organizational Documents.  On the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall issue or enter into all Securities, notes, instruments, certificates, and other documents required to be issued or entered into pursuant to the Plan.  The New Organizational Documents shall be effective as of the Effective Date and, as of such date, shall be deemed to be valid, binding, and enforceable in accordance with its terms.

All of the shares, units, or equity interests (as the case may be based on how the New Equity Interests are denominated) of New Equity Interests issued or authorized to be issued by the Reorganized Parent pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.  Each distribution and issuance referred to in Article VI hereof, and each other issuance of New Equity Interests contemplated by this Plan, shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments, agreements, and other documents (including the New Organizational Documents), as applicable, evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

M.      *Exit Facility.*

On the Effective Date, the Reorganized Debtors may enter into the Exit Facility (the terms of which will be set forth in the Exit Facility Documents).

To the extent applicable, Confirmation of the Plan shall be deemed (a) approval of the Exit Facility (including the transactions and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees, premiums, indemnities, expenses and other amounts to be paid by the Debtors or the Reorganized Debtors, as applicable, in connection therewith), to the extent not approved by the Bankruptcy Court previously, and (b) authorization for the Debtors or the Reorganized Debtors, as applicable, to, without further notice to or order of the Bankruptcy Court, (i) execute and deliver those documents and agreements necessary or appropriate to pursue or obtain the Exit Facility, including the Exit Facility Documents, and incur and pay any fees, premiums, indemnities, expenses and other amounts in connection therewith, and (ii) act or take action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Debtors or the Reorganized Debtors, as applicable, may deem to be necessary to consummate the Exit Facility.

As of the Effective Date, upon the granting or continuation of Liens in accordance with the Plan and the Exit Facility Documents, such Liens shall constitute valid, binding, enforceable, and automatically perfected Liens in the collateral specified in the Exit Facility Documents without the need of any additional action.

The guarantees, mortgages, pledges, Liens, and other security interests granted to secure the obligations arising under the Exit Facility Documents have been granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder and shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law, and the priorities of such Liens and security interests shall be as set forth in the Exit Facility Documents. Notwithstanding anything to the contrary herein, the Reorganized Debtors, the Exit Facility Agent and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

N.      *Corporate Action.*

Upon the Effective Date, all of the actions contemplated under the Plan shall be deemed authorized and approved in all respects, without the need for further Bankruptcy Court approval or any board or equity holders approval or other corporate action, including: (a) the offering,

issuance and distribution of the New Equity Interests, including the New Equity Interests issued pursuant to the Rights Offering; (b) implementation of the Restructuring Transactions; (c) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date); (d) adoption of the New Organizational Documents; (e) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases (as applicable); (f) implementation, entry into, and performance under the Exit Facility, if applicable; and (g) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate, partnership, limited liability company, or other governance action required by the Debtors or the Reorganized Debtor, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Security holders, members, directors, or officers of the Debtors or the Reorganized Debtors, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Equity Interests, the New Organizational Documents, the Definitive Documents, and any and all other agreements, documents, Securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.N shall be effective notwithstanding any requirements under non-bankruptcy Law.

O.     *New Organizational Documents.*

On or immediately prior to the Effective Date, the New Organizational Documents shall be automatically deemed to have been adopted by the applicable Reorganized Debtors and become effective. To the extent required under the Plan or applicable non-bankruptcy Law, each of the Reorganized Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state, province, or country of organization if and to the extent required in accordance with the applicable Laws of the respective state, province, or country of organization or formation. The New Organizational Documents will prohibit the issuance of non-voting equity Securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code.

After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents in accordance with the terms thereof, and the Reorganized Debtors may file such amended certificates, articles of incorporation, or such other applicable formation documents and other constituent documents as permitted by the Laws of the respective states, provinces, or countries of incorporation or formation and the New Organizational Documents.

1.     Directors and Officers of the Reorganized Debtors.

As of the Effective Date, the terms of the current members of the boards of directors and similar governing bodies of the Debtors shall expire and each such member shall be deemed to have resigned, and the members of the New Boards and new officers of each of the Reorganized

Debtors shall be deemed to have been appointed. In subsequent terms, following the Effective Date, members of the New Boards and new officers of each of the Reorganized Debtors shall be appointed in accordance with the New Organizational Documents and other constituent documents of each Reorganized Debtor, as applicable.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, to the extent known, the identity and affiliation of any Person proposed to serve on the New Boards will be disclosed in the Plan Supplement or prior to the Confirmation Hearing, as well as those Persons that will serve as officers of the Reorganized Debtors. Provisions regarding the removal, appointment, and replacement of members of the New Boards will be disclosed in the New Organizational Documents.

2. Effectuating Documents; Further Transactions.

On and after the Effective Date, the Reorganized Debtors and their respective officers, directors, members, or managers (as applicable), are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

P.    *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, each Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII hereof, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

The Reorganized Debtors may pursue such retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. The Debtors and Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII hereof. Unless otherwise agreed upon in writing by the parties to the applicable Cause of Action, all objections to the Schedule of Retained Causes of Action must be Filed with the Bankruptcy Court on or before Confirmation Hearing. Any such objection that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Reorganized Debtor, without the need for any objection or responsive pleading by the Reorganized Debtors or**

**any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.** The Debtors may settle any such objection without any further notice to or action, order, or approval of the Bankruptcy Court. If there is any dispute regarding the inclusion of any Cause of Action on the Schedule of Retained Causes of Action that remains unresolved by the Debtors, such objection shall be resolved by the Bankruptcy Court at the Confirmation Hearing. Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors, except as otherwise expressly provided in the Plan, including Article VIII hereof. The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

Q.      *1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor, or to any other Person) of property under, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or Reorganized Debtors, including the New Equity Interests; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant and perfection of collateral as security for the Reorganized Debtors' obligations under and in connection with the Exit Facility; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate federal, state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee,

or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

R.    *Indemnification Obligations.*

Consistent with applicable Law, all indemnification provisions in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be reinstated and remain intact and shall survive the effectiveness of the Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

Each Executory Contract and Unexpired Lease shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract and Unexpired Lease: (1) was rejected previously by the Debtors; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to reject Filed on or before the Effective Date; or (4) is identified on the Rejection Executory Contracts and Unexpired Leases Schedule. The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates of the Debtors or the Reorganized Debtors. The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions and assignments.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

To the maximum extent permitted by Law, unless otherwise provided herein, the transactions contemplated by this Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under any Executory Contract or Unexpired Lease assumed pursuant

to this Plan, or any other transaction, event, or matter that would (1) result in a violation, breach, or default under such Executory Contract or Unexpired Lease; (2) increase, accelerate, or otherwise alter any obligations, rights, or liabilities of the Debtors or the Reorganized Debtors under such Executory Contract or Unexpired Lease; or (3) result in the creation or imposition of a Lien upon any property or asset of the Debtors or the Reorganized Debtors pursuant to the applicable Executory Contract or Unexpired Lease.  Any consent or advance notice required under such Executory Contract or Unexpired Lease in connection with the assumption thereof shall be deemed satisfied by Confirmation.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court no later than thirty (30) days after the effective date of such rejection.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable.  Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with the provisions herein.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, their Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.**  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article V.B of this Plan.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

The Debtors or the Reorganized Debtors, as applicable, shall pay Cure Claims, if any, in the ordinary course of business.  Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed under the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors or the Reorganized Debtors, as applicable, upon assumption thereof.  The Debtors intend to honor their obligations and continue to perform under their Executory Contracts and Unexpired Leases in the ordinary course of business.

Entry of the Confirmation Order shall constitute approval of the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the

Plan and the Rejected Executory Contracts and Unexpired Leases Schedule, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

The Combined Hearing Notice will notify all counterparties to Executory Contracts and Unexpired Leases with the Debtors (i) that all Executory Contracts and Unexpired Leases will be assumed by the Reorganized Debtors under the Plan, unless such Executory Contracts and Unexpired Leases: (a) were assumed or rejected previously by the Debtors; (b) previously expired or terminated pursuant to their own terms; (c) are the subject of a motion to reject Filed on or before the Effective Date; or (d) are identified on the Rejected Executory Contracts and Unexpired Leases Schedule, and (ii) of the Executory Contract and Unexpired Lease Assumption Objection Deadline (as defined below).  The Claims and Balloting Agent will mail the Combined Hearing Notice to all known counterparties to Executory Contracts and Unexpired Leases by April 7, 2025, providing such parties with sufficient notice to object to the proposed treatment of the applicable Executory Contract or Unexpired Lease prior to the Executory Contract and Unexpired Lease Assumption Objection Deadline.

Any objection to the assumption of an Executory Contract or Unexpired Lease must be Filed with the Bankruptcy Court on or before May 6, 2025, at 4:00 p.m. (prevailing Central Time) (the "Executory Contract and Unexpired Lease Assumption Objection Deadline").  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or Cure amount (including any request for an additional or different Cure amount) prior to the Executory Contract and Unexpired Lease Assumption Objection Deadline will be deemed to have assented to such assumption or Cure amount and any untimely request for an additional or different Cure amount shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the applicable Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.  **To the extent an Executory Contract or Unexpired Lease proposed to be assumed, including pursuant to Article V.A. of the Plan, is not listed as having a related cure cost, the cure cost for such Executory Contract or Unexpired Lease shall be deemed to be $0.00 and any counterparty to such Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption will be deemed to have consented to such assumption and deemed to release any Claim or Cause of Action for any monetary defaults under such Executory Contract or Unexpired Lease.**  Any Cure shall be deemed fully satisfied, released, and discharged upon payment of the Cure.  The Reorganized Debtors may settle any Cure in the ordinary course of the Debtors' business without any further notice to or action, order, or approval of the Bankruptcy Court.

The assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, in connection with the Restructuring Transactions, shall result in the full release and satisfaction of any nonmonetary defaults arising from or triggered by the filing of these Chapter 11 Cases, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (2) the**

effective date of such assumption, or (3) the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

D.     *Assumption of Mechanic's Lien Claimants' Executory Contracts.*

As part of the global compromise and settlement with respect to Holders of Claims in Class 4 (Virginia Mechanic's Liens Claims), any contract between a Holder of a Mechanic's Lien Claim and the Debtors shall be deemed to have a cure amount of $0.00 (with the Holder of such Claim receiving the treatment provided for in Article III.B.4 of the Plan in full and final satisfaction of such Claim). **Any counterparty to such Executory Contract that fails to object timely to the proposed assumption will be deemed to have consented to such assumption and deemed to release any Claim or Cause of Action for any monetary defaults under such Executory Contract.**

E.     *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy Law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

F.     *Insurance Policies.*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto (including all D&O Liability Insurance Policies), shall be treated as Executory Contracts hereunder. Unless otherwise provided in the Plan, on the Effective Date, in connection with all contemplated transactions under this Plan, (1) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims (including all D&O Liability Insurance Policies) and (2) such insurance policies and any agreements, documents, or instruments relating thereto, including all D&O Liability Insurance Policies, shall revest in the applicable Reorganized Debtors.

Nothing in this Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other Final Order (including any other provision that purports to be preemptory or supervening), (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third party administrators have to pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors or draw on any collateral or security therefor. For the avoidance of doubt, insurers and third-party administrators shall not need to nor be required to file or serve a cure objection or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims bar date or similar deadline governing cure amounts or Claims.

Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations (as and to the extent

provided in the D&O Liability Insurance Policies) assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed.

In addition, after the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect, with respect to conduct occurring prior to the Petition Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such directors and officers remain in such positions after the Effective Date.

G.      *Reservation of Rights.*

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease pursuant to the Plan.

H.      *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.      *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or Reorganized Debtor in the ordinary course of their business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Distributions on Account of Claims Allowed as of the Effective Date.*

Except as otherwise provided herein, in a Final Order, or as otherwise agreed to by the Debtors or the Reorganized Debtors, as the case may be, and the Holder of the applicable Allowed Claim on the first Distribution Date, the applicable Reorganized Debtors shall make initial distributions under the Plan on account of Claims Allowed on or before the Effective Date, subject to the Reorganized Debtors' right to object to Claims; *provided* that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during

the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.D of the Plan, and (3) Allowed General Unsecured Claims shall be paid in accordance with Article III.B.5 of the Plan.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy Law or in the ordinary course of business.

B.      *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

C.      *Rights and Powers of Disbursing Agent.*

1. Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2. Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1. Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim is transferred twenty (20) or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.  Delivery of Distributions in General.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to holders of Allowed Claims and Intercompany Interests (as applicable) as of the Distribution Record Date at the address for each such holder as indicated on the Debtors' records as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors.

3.  Minimum Distributions.

No fractional shares of New Equity Interests shall be distributed and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on account of an Allowed Claim or Intercompany Interest (as applicable) would otherwise result in the issuance of a number of shares of New Equity Interests that is not a whole number, the actual distribution of shares of New Equity Interests shall be rounded to the next lower whole number with no further payment therefor.  The total number of authorized shares of New Equity Interests to be distributed to holders of Allowed Claims hereunder shall be adjusted as necessary to account for the foregoing rounding.  Neither the Reorganized Debtors nor the Disbursing Agent shall have any obligation to make a distribution that consists of less than one share of New Equity Interests or is less than two hundred and fifty dollars ($250) to any Holder of an Allowed Claim.

4.  Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder of Allowed Claims or Allowed Interests (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time all currently-due, missed distributions shall be made to such Holder without interest.  Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors or is canceled pursuant to this Article VI, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

Any distribution under the Plan that is an unclaimed distribution or remains undeliverable (as reasonably deemed unclaimed or undeliverable by the Reorganized Debtors or the Disbursing Agent) for a period of ninety (90) days after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such unclaimed distribution or undeliverable distribution shall revest in the applicable Reorganized Debtor automatically (and without need for a further order by the Bankruptcy Court, notwithstanding any applicable federal, provincial, or estate escheat, abandoned, or unclaimed property Laws to the contrary) and, to the extent such unclaimed distribution is comprised of New Equity Interests, then such New Equity Interests shall be canceled.  Upon such revesting, the Claim of the Holder or its successors with respect to such property shall be canceled, released, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws, or any provisions in any document governing the distribution that is an unclaimed distribution, to the contrary, and the Claim of any Holder of Claims and Interests to such property or Interest in property shall be discharged and forever barred.  The Disbursing Agent shall adjust the distributions of the New

Equity Interests to reflect any such cancellation; however, for the avoidance of doubt, additional Securities shall not be issued to other Holders of Claims or Interests due to any such cancellations.

5.   Surrender of Canceled Instruments or Securities.

On the Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim or an Interest that has been canceled in accordance with Article IV.G hereof shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent.  Such surrendered certificate or instrument shall be canceled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing holders to receive distributions under the Plan, charging liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Reinstated  under the Plan.

E.   *Manner of Payment.*

1.   All distributions of the New Equity Interests to the Holders of the applicable Allowed Claims under the Plan shall be made by the Disbursing Agent or transfer agent on behalf of the Debtors or the Reorganized Debtors, as applicable.

2.   All distributions of Cash to the Holders of the applicable Allowed Claims under the Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor or Reorganized Debtor.

3.   At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F.   *Compliance with Tax Requirements.*

In connection with the Plan, to the extent required by applicable Law, the Debtors, Reorganized Debtors, the Disbursing Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors, Disbursing Agent or other applicable withholding agent may require, as a condition to receipt of a distribution, that the Holder of an Allowed Claim provide any information reasonably necessary to allow the distributing party to comply with any such withholding and reporting requirements imposed by any Governmental Unit (including, for the avoidance of doubt, an IRS Form W-9 or, if the Holder is a non-U.S. Person, an appropriate IRS Form W-8, unless such Person is exempt from

46

information reporting requirements under the U.S. Internal Revenue Code of 1986, as amended, and so notifies the Reorganized Debtors, Disbursing Agent or other applicable withholding agent, as applicable, and/or any other forms or documents requested by the Reorganized Debtors, Disbursing Agent or other applicable withholding agent to reduce or eliminate any required withholding).

Notwithstanding any other provision of this Plan: (a) each Holder of an Allowed Claim that is to receive a distribution under this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations on account of such distribution; and (b) no distributions under this Plan shall be required to be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Reorganized Debtors or the Disbursing Agent, as applicable, for the payment and satisfaction of such tax obligations or has, to their satisfaction, established an exemption therefrom.

The Debtors and the Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

G.    *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims, as determined for United States federal (and applicable state and local) income tax purposes, and then, to the extent the consideration exceeds the principal amount of the Claims, to any allowable portion of such Claims for accrued but unpaid interest.

H.    *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal (National Edition)*, on the Effective Date.

I.    *Setoffs and Recoupment.*

Except as expressly provided in this Plan, each Reorganized Debtor may, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code, applicable bankruptcy or non-bankruptcy Law, or as may be agreed to by the Holder of an Allowed Claim), set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable holder.  In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable,

unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.G hereof on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

J.      *Claims Paid or Payable by Third Parties.*

1.   <u>Claims Paid by Third Parties.</u>

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Reorganized Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

2.   <u>Claims Payable by Third Parties.</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.   <u>Applicability of Insurance Policies.</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.    *Allowance of Claims.*

After the Effective Date, except as otherwise expressly set forth herein, each of the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Effective Date. The Debtors or the Reorganized Debtors, as applicable, may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy Law, without further notice or order from the Bankruptcy Court. All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

Any Claim that has been listed in the Schedules as disputed, contingent or unliquidated, and for which no Proof of Claim has been timely filed by the applicable Bar Date, is not considered Allowed and shall be expunged without further action and without any further notice to or action, order or approval of the Bankruptcy Court.

Without limiting the foregoing, and subject to the Debtors' right to object to any Proof of Claim or Lien on any basis, to the extent any further action is required with respect to any Proof of Claim (including with respect to the assertion of a Lien with respect thereto) by any order of the Court, such Proof of Claim shall not be considered Allowed unless in compliance with such order.

B.    *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the exclusive authority: (1) to File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.P of the Plan.

Any objections to Proofs of Claims (other than Administrative Claims) shall be served and Filed (a) on or before the date that is one hundred and eighty days following the later of (i) the Effective Date and (ii) the date that a Proof of Claim is Filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a Holder of a Claim or (b) such later date as ordered by the Bankruptcy Court.

C.    *Estimation of Claims and Interests.*

Before, on, or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate

any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.      *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors, without the Reorganized Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Disallowance of Claims or Interests.*

Except as otherwise expressly set forth herein, all Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

F.      *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest; *provided* that if only the Allowed amount of an otherwise valid Claim or Interest is Disputed, such Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

G.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that

the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

H.     *No Postpetition Interest on Claims.*

Unless otherwise specifically provided herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

I.     *Accrual of Dividends and Other Rights.*

For purposes of determining the accrual of distributions or other rights after the Effective Date, the New Equity Interests shall be deemed distributed as of the Effective Date regardless of the date on which they are actually distributed; *provided*, *however*, that the relevant Reorganized Debtors shall not pay any such distributions or distribute such other rights, if any, until after distribution of the New Equity Interests actually takes place.

# ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.     *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Definitive Documents, the Plan, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims (other than

the Reinstated Claims) and Interests (other than the Intercompany Interests that are Reinstated) subject to the occurrence of the Effective Date.

B.    ***Release of Liens.***

1.   *Release of Liens Generally.*

**Except as otherwise provided in the Plan, the Confirmation Order, or in any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan (including, for purposes of clarity, the Exit Facility Documents), on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, charges, encumbrances, Liens, pledges, or other security interests against any property of the Estates (wherever recorded, filed, or otherwise noticed under applicable Law (whether domestic or foreign)) shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, charges, encumbrances, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.**

**Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed (and is hereby directed), at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases or other applicable instruments and documentation. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Reorganized Debtors that are necessary or desirable to record, evidence or effectuate the cancellation, release and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's (or the applicable agents for such Holder's) behalf.**

**Notwithstanding anything to the contrary herein, none of the Liens or other security interests securing obligations on account of the Exit Facility or the Exit Facility Documents shall be released, discharged, or terminated, and shall remain in full force and effect in all respects, and none of the provisions of this Article VIII.B shall apply to the Exit Facility or any Liens or other security interests with respect thereto.**

2.   *Release of Liens Against the Virginia Property.*

Without limiting the foregoing, the entry of the Confirmation Order shall constitute a finding by the Bankruptcy Court that any Virginia Mechanic's Lien against the Virginia Property shall be discharged upon the Effective Date, and upon the Effective Date, without further order of the Court, all Virginia Mechanic's Liens against the Virginia Property shall be discharged and the Debtors are authorized to record the Confirmation Order in the applicable land records to effectuate the same.

C.   **Releases by the Debtors.**

Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, their Estates, the Reorganized Debtors, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, and liabilities whatsoever, including any derivative claims, asserted by or assertable on behalf of any of the Debtors, their Estates, or the Reorganized Debtors, as applicable, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Company-Related Matters.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any obligations arising pursuant to or after the Effective Date or any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (b) any Causes of Action included in the Schedule of Retained Causes of Action; or (c) any act or omission determined by a court of competent jurisdiction to have resulted from willful misconduct, bad faith or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after reasonable investigation by the Debtors

and after due notice and opportunity for a hearing; and (f) a bar to any of the Debtors, their Estates, or the Reorganized Debtors asserting any Claim or Cause of Action released pursuant to the Debtor Release.

D.    *Releases by Third Parties.*

Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all Claims, Causes of Action, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, that such Releasing Party would have been legally entitled to assert in its own right (whether individually or collectively) or otherwise based on or relating to, or in any manner arising from, in whole or in part, the Company-Related Matters.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (b) any Causes of Action included in the Schedule of Retained Causes of Action; or (c) any act or omission determined by a court of competent jurisdiction to have resulted from willful misconduct, bad faith or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the Claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for a hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action pursuant to the Third-Party Release.

E.    *Exculpation.*

Effective as of the Effective Date, to the fullest extent permissible under applicable Law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party hereby is exculpated from any Claim or Cause of Action related to, any act or omission in connection with, relating to, or arising out of the negotiation, solicitation, confirmation, execution, or

implementation (to the extent on or prior to the Effective Date) of, as applicable, the **Company-Related Matters** except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted bad faith, fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.   Notwithstanding anything to the contrary in the foregoing, an Exculpated Party shall be entitled to exculpation solely for actions taken from the Petition Date through the Effective Date, and the exculpation set forth above does not exculpate (a) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (b) any Causes of Action included in the Schedule of Retained Causes of Action.

F.     *Injunction.*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims and Causes of Action, and liabilities whatsoever, including any derivative claims, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, asserted or assertable on behalf of any of the Debtors, their Estates, or the Reorganized Debtors, as applicable, that have been released, settled, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Exculpated Parties, the Released Parties, or the Virginia Property: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interest; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities, such property, or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind, except to the extent such assertions are used as a defense to Claims or Causes of Action by the Debtors arising prior to the Effective Date, against any obligation due from such Entities or against the Virginia Property or the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan (including against the Virginia Property).

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, the Released Parties, or the Virginia Property, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article VIII.C, Article VIII.D, Article VIII.E, and Article VIII.F hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, Released Party, or the Virginia Property, as applicable.**

**The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Allowed Claim or Allowed Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth herein.**

G.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.      *Document Retention.*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors; *provided* that, notwithstanding the consummation of the Restructuring Transactions described herein, any privilege applicable to documents maintained in accordance with such policy shall be retained.

I.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed

and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

*A.    Conditions Precedent to Confirmation.*

It shall be a condition to the confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

(1)    the Bankruptcy Court shall have entered an order or orders: (i) approving the Disclosure Statement, in form and substance acceptable to the Plan Sponsors and DIP Lenders as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) authorizing the solicitation of votes with respect to the Plan; (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan; (iv) confirming and giving effect to the terms and provisions of the Plan; (v) determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtors and the Plan;  and (vi) authorizing the Debtors to execute, enter into and deliver the Plan and related documents, and to execute, implement and to take all actions otherwise necessary or appropriate to give effect to the transactions and transfer of assets contemplated by the Plan and the Plan Documents;

(2)    the Plan shall be in form and substance satisfactory to the Debtors, the Plan Sponsors and DIP Lenders;

(3)    the Confirmation Order shall be in form and substance satisfactory to the Debtors, the Plan Sponsors and DIP Lenders;

(4)    No default of event of default shall have occurred under the DIP Facility, and the DIP Orders shall remain in full force and effect and in a form and substance acceptable to the DIP Lenders; and

(5)    all Transaction Expenses shall have been paid in full in Cash.

*B.    Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, which shall be a Final Order;

(b)    no default or event of default shall have occurred under the DIP Facility, and the DIP Orders shall remain in full force and effect;

(c)     the final version of each of the Plan, the Definitive Documents, and all documents contained in any supplement to the Plan, including the Plan Supplement and any exhibits, schedules, amendments, modifications, or supplements thereto or other documents contained therein shall have been executed or Filed, as applicable in form and substance consistent in all respects with the Plan, and comply with the applicable consent rights set forth in the Plan, and/or any such documents shall not have been modified in a manner inconsistent with this Plan absent the Plan Sponsors' prior written consent;

(d)     each of the Definitive Documents shall have been executed by the applicable parties thereto (or Filed), in each case, as applicable, consistent in all respects with the Plan, and the conditions to effectiveness of each of the foregoing shall have been satisfied or waived in accordance with their respective terms;

(e)     the Restructuring Transactions shall have been consummated in accordance with the Plan;

(f)     the Rights Offering shall have occurred;

(g)     the New Money Investment shall have occurred;

(h)     the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the Restructuring Transactions;

(i)     the Professional Fee Amount shall have been funded into the Professional Fee Account pending the approval of such fees and expenses by the Bankruptcy Court;

(j)     all Transaction Expenses shall have been paid in full in Cash;

(k)     no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the consummation of the Plan or the Restructuring Transactions; and

(l)     the Debtors shall have implemented the Restructuring Transactions and all transactions contemplated in the Plan in a manner reasonably acceptable to the Plan Sponsors.

C.     *Waiver of Conditions.*

Any one or more of the conditions to Consummation (or component thereof) set forth in this Article IX may be waived by the Debtors solely with the prior written consent of the Plan Sponsors, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

D.      *Effect of Failure of Conditions.*

If Consummation does not occur as to any Debtor, the Plan shall be null and void in all respects as to all Debtors, unless the Plan Sponsors otherwise consent to Consummation of the Plan as to the remaining Debtors, in which case Consummation as to such remaining Debtors may proceed.  As it relates to the Debtors with respect to which Consummation does not occur, nothing contained in the Plan, the Disclosure Statement: (1) constitute a waiver or release of any Claims by such Debtors, Claims, or Interests; (2) prejudice in any manner the rights of such Debtors, any holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by such Debtors, any Holders of Claims or Interests, or any other Entity.

E.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments.*

Except as otherwise specifically provided in this Plan, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan.*

Subject to the prior written consent of the Plan Sponsors, the Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any

Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

(b)     decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)     resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cures pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

(d)     to resolve any disputes concerning Disputed Claims and consider the allowance, classification, priority, compromise, estimation, secured or unsecured status, amount of payment of any Claim, including any Administrative Claims, including any dispute over the application to any Claim of any limitation on its allowance set forth in sections 502 or 503 of the Bankruptcy Code or asserted under non-bankruptcy Law pursuant to section 502(b)(1) of the Bankruptcy Code;

(e)     ensure that distributions to holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

(f)     adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(g)     adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(h)     enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with the Plan or the Disclosure Statement;

(i)     enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(j)     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(k)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

(l)     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(m)     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.D hereof;

(n)     enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(o)     determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

(p)     enter an order concluding or closing the Chapter 11 Cases;

(q)     adjudicate any and all disputes arising from or relating to distributions under the Plan;

(r)     consider any modifications of the Plan in accordance with section 1127 of the Bankruptcy Code, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(s)     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

(t)     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(u)     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(v)     to recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(w)     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article VIII hereof;

(x)     enforce all orders previously entered by the Bankruptcy Court; and

(y)     hear any other matter not inconsistent with the Bankruptcy Code.

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the New Organizational Documents, the New Equity Interests, the Exit Facility (subject to Article IV.M), and any documents related thereto shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain jurisdiction with respect thereto.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

*A.      Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims or Interests have, or are deemed to have accepted the Plan), all Entities that are parties to or are

subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.    *Additional Documents.*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Closure of Cases and Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, prior to the Effective Date shall be paid on the Effective Date or as soon as reasonably practicable thereafter. On the Effective Date, the cases of the Debtors other than Plenty Unlimited Texas, LLC shall be closed (and the Confirmation Order shall serve as the final decree for such cases) without the need for further motion or order. Following the Effective Date, all fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by Plenty Unlimited Texas, LLC  for each quarter (including any fraction thereof) until the earlier of entry of a final decree closing the Chapter 11 Case for Plenty Unlimited Texas, LLC or an order of dismissal or conversion, whichever comes first.

D.    *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Confirmation Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.  The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Confirmation Date.

E.    *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

F.    *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign,

Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Debtors | Counsel to the Debtors |
|---|---|
| Plenty Unlimited Texas LLC<br>1461 Commerce Drive<br>Laramie, WY 82070<br>Attention: Dan Malech, Kei Nishimura | Sidley Austin LLP<br>787 Seventh Avenue<br>New York, New York 10019<br>Attention: Anthony Grossi, Ameneh Bordi, and Weiru Fang<br><br>-and-<br><br>Wilson Sonsini Goodrich & Rosati<br>222 Delaware Ave #800<br>Wilmington, DE 19801<br>Attention: Erin Fay |
| **Counsel to the Plan Sponsors** | |
| Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>Attention: Brian Resnick, Jonah Peppiatt, Amber Leary | Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004<br>Attention: Benjamin Beller |

After the Effective Date, the Reorganized Debtors have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      *Entire Agreement.*

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      *Plan Supplement.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://cases.stretto.com/PlentyUnlimited or the Bankruptcy Court's website at www.txs.uscourts.gov/bankruptcy.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.      *Severability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided* that any such alteration or interpretation shall be acceptable to the Debtors and the Plan Sponsor.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' or the Reorganized Debtors', consent, as applicable; and (3) nonseverable and mutually dependent.

L.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code and any applicable securities Laws, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code and any applicable securities Laws in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable Law, rule, or regulation governing the solicitation of

votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

M.      *Closing of Chapter 11 Cases.*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.      *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

O.      *Tax Matters.*

The Debtors will cooperate with the advisors selected by the Plan Sponsors in respect of all tax matters relating to the Plan and all transactions, including the Restructuring Transactions, and documentation effectuating the Plan, including the Definitive Documents.

The Reorganized Debtors are authorized, on behalf of the Debtors, to request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

Dated: March 23, 2025

**PLENTY UNLIMITED INC.**
**MJNN LLC**
**WHITE FARMS LLC**
**BLUE GARDENS LLC**
**BRIGHT AGROTECH, INC.**
**P F2 VA LLC**
**PLENTY UNLIMITED TEXAS LLC**

*/s/ Daniel Malech*
Daniel Malech
Interim CEO or Authorized Signatory